UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LARRY NELSON, *Petitioner* | : PRISONER<br>: CASE NO. 3:03CV946(RNC)(DFM)<br>: |
| V. | : |
| WARDEN DAVID STRANGE, *Respondent* | : JULY 12, 2004<br>: |

### MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION FOR WRIT OF HABEAS CORPUS

This memorandum is submitted in opposition to the application for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 in the above-captioned proceeding. The petitioner claims that he was denied the effective assistance of counsel when entering guilty pleas to charges of theft of a firearm, criminal possession of a firearm, and larceny in the third degree in 1999. For the reasons set forth below, the petitioner's claim is without merit and he is not entitled to federal habeas corpus relief.

**I.   PROCEDURAL HISTORY**

This procedural history is compiled from documents forwarded as appendices to the respondent's Motion To Dismiss [Doc. # 6] dated August 8, 2003,[1] as follows:

Appendix A   Record on appeal from the state habeas court's decision

Appendix B   Petitioner's brief on appeal from the state habeas court's decision

Appendix C   Respondent's brief on appeal from the state habeas court's decision

---

[1] Rather than resubmitting copies of these documents, the respondent directs the Court's attention to those copies submitted with the respondent's Motion to Dismiss which was filed in August 2003.

    Appendix D    Decision of the Connecticut Appellate Court on appeal from the state habeas court's decision; <u>Nelson v. Commissioner of Correction</u>, 74 Conn. App. 912, 815 A.2d 300 (2003)

    Appendix E    Petitioner's petition for certification to the Connecticut Supreme Court

    Appendix F    Decision of the Connecticut Supreme Court denying petition for certification to appeal; <u>Nelson v. Commissioner of Correction</u>, 263 Conn. 911, 821 A.2d 766 (2003)

On October 7, 1999, the petitioner entered guilty pleas to charges of theft of a firearm in violation of Connecticut General Statutes § 53a-212, criminal possession of a pistol in violation of § 53a-217c, and larceny in the third degree in violation of § 53a-124. On October 25, 1999, the trial court imposed a sentence of fifty-six (56) months incarceration and thirty-five (35) months special parole. This sentence was to run consecutively to a sentence that the petitioner was then serving.

Subsequently, the petitioner initiated state habeas corpus proceedings. <u>Larry Nelson v. Warden, Radgowski</u>, Docket No. CV00-0553513, Superior Court in the judicial district of New London. Appendix A at 1, 29. Counsel was appointed and an amended petition was filed in which the petitioner's claims for relief were described. <u>See</u> Appendix A at 3-8. A trial on the merits of those claims was held on November 19, 2001. Appendix B at 2; Appendix C at 1. In a memorandum of decision dated December 11, 2001, the state habeas court denied the petitioner's claims for relief and dismissed the petition.

The petitioner appealed. On February 4, 2003, the Connecticut Appellate Court affirmed the judgment of the state habeas court. Appendix D; <u>Nelson v. Commissioner of Correction</u>, 74 Conn. App. 912, 815 A.2d 300 (2003) (per curiam). The petitioner then petitioned the Connecticut Supreme Court for discretionary review. Appendix E. The

Connecticut Supreme Court denied that petition on April 10, 2003. Appendix F; <u>Nelson v. Commissioner of Correction</u>, 263 Conn. 911, 821 A.2d 766 (2003).

On May 28, 2003, the petitioner initiated the instant proceedings by filing a petition for writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254. That petition contained an unexhausted claim and the respondent moved to dismiss the petition [Docs. # 6 and 7]. The Court dismissed the unexhausted claim. [Doc. # 9]. Rather than returning to the state courts to exhaust that claim, the petitioner chose to file an amended petition [Doc. # 11] in which he omitted the unexhausted claim.

## II.    ARGUMENT

The petitioner claims that he was denied the effective assistance of counsel in entering his guilty pleas in 1999. Specifically, he alleges that:

> In the transcript 10-7-99, page, 3, line 11-20, the judge stated that the offer exceed the maximum penalty. Which prove that my attorney did not know the min. or max. penalty at all. The judge, my attorney and the states attorney had a sidebar discussion, which was never made known to me where they reconstruct the plea agreement which turn out to be illegal. I ask for a withdrawal of my guilty plea before sentencing but was denied.

Amended Petition [Doc. # 11] at page 9.

The petitioner unsuccessfully raised this claim before the state courts of Connecticut. For the reasons set forth below, the decision of the state courts is not contrary to, and not an unreasonable applications of, clearly established Federal law as determined by the U.S. Supreme Court. Therefore, the petitioner is not entitled to habeas corpus relief and his petition should be dismissed.

### A. Standard Of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a writ of habeas corpus "may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).[2] The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the High Court's "decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412, 120 S.Ct. at 1523.

A state court decision is "contrary to" clearly established Federal law if it falls within one of two scenarios. Under the first scenario, a state-court decision will be contrary to "clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." Williams, 529 U.S. at 405, 120 S.Ct. at 1519. As for the second scenario, the Court explained that a "state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 406, 1519-20.

---

[2] Justice O'Connor delivered the opinion of the Court with respect to Part II in which it determined that the Antiterrorism and Effective Death Penalty Act (AEDPA) modified the role played by federal habeas courts in reviewing petitions filed by state prisoners and interpreted § 2254(d)(1). Justice Stevens delivered the opinion of the Court with respect to Parts I, III, and IV.

If a state-court decision is not "contrary to" U.S. Supreme Court precedent, the federal habeas court must determine whether the state court's decision involved an "unreasonable application" of clearly established Federal law. In so doing, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Thus, courts must apply an objective standard. An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410, 1522. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411, 1522.

Once this standard is applied to the claim raised by the instant petitioner, it becomes clear that federal habeas corpus relief is unwarranted and the petition must be dismissed.

### B. The Petitioner Bears A Heavy Burden In Attempting To Establish That He Was Denied The Effective Assistance Of Counsel

On appeal to the Connecticut Appellate Court, the petitioner claimed that his "trial counsel's incompetence" created a situation under which his plea agreement was restructured. He argued that such restructuring resulted in prejudice because, under the plea agreement that he accepted, he would only have to appear before the parole board once. He asserted that under the restructured sentence, he would have to appear twice before that board. Appendix B at 10. The state courts, however, rejected this claim by the petitioner.

There are two components to a claim of ineffective assistance of counsel. A habeas petitioner alleging ineffectiveness must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In deciding whether a petitioner has satisfied the first prong of Strickland, courts must decide whether counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064. In other words, the question is whether counsel's acts or omissions were "outside the wide range of professionally competent assistance" or failed to meet "prevailing professional norms." Id. at 690, 2066. In assessing counsel's performance, courts must "strongly" presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. Flawlessness is not required. Rather, the right to counsel is the right to effective assistance and not the right to perfect representation.

To satisfy the "prejudice" requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In other words, when a petitioner challenges his conviction on the ground of ineffective assistance of counsel, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.

The instant petitioner entered guilty pleas to various charges. To satisfy the "prejudice" requirement of Strickland when a petitioner entered guilty pleas, the petitioner

6

"must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The resolution of the prejudice inquiry in a guilty plea case will depend on the likelihood that a potential defense would have succeeded at trial.

> **C.     The Petitioner Cannot Demonstrate That The State Court's Decision Was Contrary To, Or An Unreasonable Application Of, The Standards Set Forth In Strickland v. Washington**

In asserting that his counsel was ineffective, the petitioner claims that was denied the effective assistance of counsel when entering his guilty pleas in 1999. After hearing the petitioner's evidence in support of his claim, the state habeas court made the following factual findings:

> [O]n or about June 11, 1999, petitioner was arrested and charged with larceny in the third degree and burglary in the third degree. After his arrest, he was again arrested on a warrant signed on June 2, 1999. The warrant alleges that petitioner had been involved in breaking into a police vehicle and taking a number of weapons and other police or military types of equipment. Under the warrant, petitioner was charged with burglary in the third degree in violation of General Statutes § 53a-103, larceny in the second degree in violation of General Statutes § 53a-123, criminal mischief in the first degree in violation of General Statutes of 53a-115, four counts of theft of a firearm in violation of § 53a-212 and criminal possession of a pistol by a convicted felon in violation of § 53a-217c.

> The warrant affidavit alleges, and the evidence indicates, that petitioner had prior felony convictions which included larceny in the second degree, robbery in the third degree, burglary in the third degree, theft of a firearm, escape and violation of probation. Petitioner was represented throughout the proceedings on these charges in the Superior Court, G.A. 6, by Attorney David Bachman, who had represented petitioner in at least one prior criminal matter. It is Mr. Bachman's representation of petitioner which is claimed to be constitutionally ineffective.

Attorney Bachman met with petitioner on a number of occasions to review the case. Petitioner had given a statement to the New Haven police in which he admitted breaking into the vehicle and stealing the weapons and equipment as alleged in the warrant. The confession and petitioner's extensive criminal record involving similar crimes must have affected how petitioner and his attorney looked at the defense of this case.

The state made an offer to dispose of the matter without trial. This offer was communicated to petitioner by his attorney. The offer involved a plea of guilty to three charges with a total effective sentence of five years followed by three years special parole. This sentence would be served consecutive to the sentence petitioner was then serving and the probationary part of the prior sentence would be terminated.

Petitioner indicated that he would accept the state's offer if the total effective sentence could be reduced by the four-month period which he had been in pretrial confinement. The state agreed to this reduction and it was agreed that petitioner would plead guilty and receive a total effective sentence of 56 months followed by three years special parole. This sentence was to be served consecutive to a sentence which petitioner was then serving.

The matter came before the court (White, J.) for plea on October 7, 1999. The state's attorney brought the case before the court, indicated the charges to which petitioner was to plead and then stated:

> "Recommended to the Court to sentence him to a fifty-month sentence. That sentence to run consecutive to the sentence he's currently serving, to be followed by three years of special parole."[3]

The following colloquy then took place:

> THE COURT: So you're--that's your understanding?
>
> MR. BACHMAN: That's my understanding, Your Honor.

The state's attorney then proceeded to put petitioner to plea on the charge of theft of a firearm.

---

[3] "Although the record indicates a recommendation of 50 months, it was clearly understood by all concerned that the incarceration would be for 56 months." Appendix A at 13 n.1.

The court then interrupted the proceedings and pointed out that theft of a firearm in violation of Connecticut General Statutes § 53a-212 was a class D felony for which the maximum sentence was five years. The court then stated:

> THE COURT: My question to counsel, both state and defense, is you're asking for fifty-six months plus three years of special parole?

The court then pointed out that the recommended sentence exceeded the maximum sentence which could be imposed for a violation of § 53a-212.

A side bar conference was then held off the record.

Petitioner was then put to plea and entered a plea of guilty to each of the charges as agreed.

After discussion concerning an unrelated subject, the state's attorney put on the record the factual basis relied on by the state for the three charges to which petitioner had pled. The state's attorney then stated:

> "As indicated to the Court, the recommendation to the Court is to sentence the defendant to fifty-six months to serve, plus three years special parole. That sentence is going to run consecutive to the sentence he's currently serving."

After some unrelated discussion between counsel as to the court which imposed the sentence petitioner was then serving the court stated:

THE COURT: Okay. Madam Clerk, on the criminal possession of a gun, it's going to be fifty-six months to serve on that. On the count of stealing a firearm, that's one year concurrent plus three years special parole. And on the larceny third count in 95, that's one year concurrent.

So it'll be a total effective sentence the Court intends to impose is fifty-six months plus three years special parole, and all these sentences are going to run consecutively to any sentence he's now serving.

Attorney Bachman then brought up that it had been agreed that the probation period of the sentence which petitioner was then serving would be terminated. This was agreed to by the state and both sides waived a presentence investigation. The court then proceeded to canvass petitioner.

CANVASS BY THE COURT:

Q  Mr. Nelson, have you had any drugs, alcohol or medicine that would keep you from understanding these proceedings?

A  No.

Q  Have you had enough time to speak to an attorney and are you satisfied with his advice?

A  Yes.

Q  Based on that talk, do you understand the elements of the offenses charged, the maximum and minimum penalties, and the evidence the state says it has against you?

A  Yes.

Q  You understand that by pleading guilty you're giving up your right to a court or a jury trial; you're also giving up your right to confront and cross-examine the witnesses against you; and you're giving up your right against self incrimination?

A  Yes.

\* \* \*

>    Q   Do you understand that once I accept your pleas, you can't take them back without my permission?
>
>    A   Yes.
>
>    Q   You want me to accept your pleas?
>
>    A   Yes.
>
>                        * * *
>
>    THE COURT:   Make a finding that the pleas are made knowingly, intelligently and voluntarily, with assistance of competent counsel.  There's an adequate basis for the pleas, pleas of guilty are accepted; findings of guilty may enter. Case is going to be continued until October 25th for imposition of sentence at that time.
>
>    MR. BACHMAN:   That's correct.
>
>    THE COURT:   I'm going to impose a total effective sentence of fifty-six months, plus three years special parole, to run consecutively to any sentence he's now serving, and I'm going to terminate the probation in file ending 135.

On October 25, 1999, petitioner's case came before Judge White again for sentencing. A different prosecutor represented the state at this time.

The following then took place:

>    MR. DOSKOS:   . . . I believe the sentence was as follows; on the--on the criminal possession of a pistol by a convicted felon, 56 months to serve, plus three years special parole, a year to serve concurrent on theft of a firearm.  That--
>
>    THE COURT:   So, that would be a total effective sentence of 56 months plus three years special parole, a year concurrent on the larceny third in--
>
>    MR. DOSKOS:   But that's to--
>
>    THE COURT:   --985.

  MR. DOSKOS: --all of that is to run consecutive to his present sentence.

  THE COURT: Yes.

  MR. DOSKOS: And on the larceny third, one year to serve concurrent.

  THE COURT: Okay.

There was some discussion on the termination of probation as agreed. Mr. Bachman then stated:

  MR. BACHMAN: That's--that's correct. It was a--well, it was going to be a future probation.

After some unrelated discussion, the court started to impose sentence and the following occurred:

  THE COURT: Okay. On file ending in 978, charge of theft of a firearm, I find you guilty, a year in jail to serve. Charge of criminal possession of a gun, under 53a-217c, I find you guilty, 56 months in jail to serve, plus three years special parole.

  Mr. Doskos, could you approach the bench, please? Let's pass it. Somehow I think we addressed this last time.

  MR. BACHMAN: I thought we had.

  (Whereupon the matter was passed again and recalled later that morning.)"

When the matter again came before the court, Attorney Bachman informed the court that the state had provided him with a proposed restructuring of the plea. He then stated that in light of it, on behalf of his client, he was moving to withdraw the plea. The court then explained that the original agreed recommendation called for a total effective sentence of 56 months plus three years special parole, but the way it was originally structured, it was an illegal sentence. A restructured sentence would be 25 months to serve plus 35 months of special parole for stealing a firearm with 31 months to serve consecutively on the criminal possession of a pistol. This would result in a total effective sentence of 56 months followed by 35 months special parole. It was pointed out that this was a more favorable disposition than the previously agreed sentence. The court determined that

since the total effective sentence was more favorable to petitioner than the agreed sentence, there was no reason why he should be allowed to withdraw his plea.

Attorney Bachman and petitioner himself explained that the motion to withdraw the plea was based upon petitioner's perception that the restructured sentence would require him to serve additional time before he was eligible for parole.

The court stated that it was not part of the plea bargain to determine what time credits petitioner would get or how the Department of Correction would calculate his release date. There was further discussion between the court and petitioner, but the motion to withdraw the plea was denied.

The court then imposed the restructured sentence as follows: on the charge of theft of a firearm, 25 months plus 35 months special parole; criminal possession of a pistol, 31 months consecutive; and on the charge of larceny in the third degree, one year concurrent. The total effective sentence imposed was 56 months to serve followed by 35 months special parole.

Appendix A at 12-20.

These factual findings of state habeas court is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Having made these findings, the court then articulated the Strickland standard for resolving ineffectiveness claims. It then rejected the petitioner's allegations, as follows:

Attorney Bachman was experienced in the handling of criminal cases and had represented petitioner on prior occasions. The better evidence indicates that he met with petitioner on at least ten occasions advised him of the elements of the offenses involved, discussed the evidence against him and possible defenses. There was no credible evidence that Attorney Bachman's representation of plaintiff fell below the standard of reasonable professional assistance required by law.

The basic tactical situation facing the attorney and his client was not complicated. Petitioner was charged with a number of serious felony offenses. He had made a detailed confession to the most serious charges. A jury trial under such circumstances did not appear to be in his best interest. With a long criminal record involving similar crimes, petitioner was exposed to a lengthy period of incarceration.

13

>When the state made its recommendation which reduced the number of offenses which would require a guilty plea by the petitioner and required him to serve five years followed by three years of special parole, he agreed so long as he received credit for the four months of pretrial confinement. There is every indication in the record that petitioner voluntarily agreed to plead guilty to these certain offenses and receive a total effective sentence of 56 months followed by three years special parole.
>
>There may have been confusion as to how the sentence would be broken down and the initial sentence as proposed was illegal. However, there was never any doubt about the total effective sentence. Petitioner had discussed this sentence with his lawyer and it was repeated on the record in his presence at least seven times.
>
>Although it was structured differently, the sentence imposed was to the same charges as agreed and differed only from the plea bargain in that the special parole was reduced from 36 months to 35 months.
>
>Because petitioner must satisfy both prongs of the Strickland test to prevail on a habeas corpus petition, the failure to prove prejudice from the alleged errors of counsel is dispositive of the case. Id. Taft v. Commissioner of Correction, 47 Conn. App. 499, 505, 703 A.2d 1184 (1998). Here, Attorney Bachman properly represented petitioner who voluntarily entered guilty pleas to specific charges in anticipation of an agreed total effective sentence. His representation resulted in petitioner receiving this agreed sentence less one month of special parole.
>
>When petitioner attempted to withdraw his plea in the mistaken belief that the restructured sentence would affect his parole eligibility, Attorney Bachman pressed this motion in an appropriate and timely manner. Although the motion was denied by the court, Attorney Bachman presented the motion in such a way as to preserve whatever appellate rights petitioner may have in the matter.
>
>Considering all of the evidence, it must be concluded that petitioner has failed to prove the allegations of ineffective assistance of counsel as claimed in the first count.

Appendix A at 22-24.

In deciding a claim of ineffectiveness, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the

[petitioner] as a result of the alleged deficiencies." Strickland, 466 U.S. at 697, 104 S.Ct. at 2069. Thus, the High Court has explained that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Thus, the resolution of the prejudice inquiry depends on the likelihood that the outcome after a trial would have been more favorable to the petitioner than the plea agreement.

Here, the petitioner presented no evidence of prejudice. In order to resolve the two pending cases against him, the petitioner agreed to serve fifty-six months with an additional three years of special parole. As the state habeas court determined, "there was never any doubt about the total effective sentence. Petitioner had discussed this sentence with his lawyer and it was repeated on the record in his presence at least seven times. Although it was structured differently, the sentence imposed was to the same charges as agreed and differed only from the plea bargain in that the special parole was reduced from 36 months to 35 months." Appendix A at 23.

In one of the two cases, the petitioner faced charges of larceny in the third degree in violation of Connecticut General Statutes § 53a-124[4] and burglary in the third degree

---

[4] Larceny in the third degree is a Class D felony punishable by "a term not less than one year nor more than five years." Connecticut General Statutes §§ 53a-35a(7) and 53a-124(c).

15

in violation of § 53a-103.[5]  Appendix A at 12.  In the second case, he was charged with burglary in the third degree in violation of Connecticut General Statutes § 53a-103, larceny in the second degree in violation of § 53a-123,[6] criminal mischief in the first degree in violation of § 53a-115,[7] four counts of theft of a firearm in violation of § 53a-212,[8] and criminal possession of a pistol by a convicted felon in violation of § 53a-217c.[9]  Appendix A at 12.  Thus, the petitioner faced fifty-five (55) years incarceration if convicted on all charges.  He already had confessed to the offenses charged in the second case.  Appendix A at 12.  As the state habeas court explained, a "jury trial under such circumstances did not appear to be in his best interest.  With a long criminal record involving similar crimes, petitioner was exposed to a lengthy period of incarceration."  Appendix A at 22.  By accepting the state's plea offer, however, the petitioner could limit his exposure to <u>less</u> than five years incarceration--<u>i.e.</u>, 56 months--and three years special

---

[5] Burglary in the third degree is a Class D felony punishable by "a term not less than one year nor more than five years."  Connecticut General Statutes §§ 53a-35a(7) and 53a-103.

[6] Larceny in the second degree is a Class C felony punishable by "a term not less than one year nor more than ten years."  Connecticut General Statutes §§ 53a-35a(6) and 53a-123(c).

[7] Criminal mischief in the first degree is a Class D felony punishable by "a term not less than one year nor more than five years."  Connecticut General Statutes §§ 53a-35a(7) and 53a-115(b).

[8] Theft of a firearm is a Class D felony punishable by "a term not less than one year nor more than five years."  Connecticut General Statutes §§ 53a-35a(7) and 53a-212(b).

[9] Criminal possession of a pistol or revolver is a Class D felony punishable by "a term not less than one year nor more than five years."  Connecticut General Statutes §§ 53a-35a(7) and 53a-217c(b).

parole. The original structure of the agreement anticipated that the trial court would sentence the petitioner to fifty-six (56) months incarceration and three years special parole on the charge of theft of a firearm. Appendix A at 14. That charge, however, is a Class D felony which carries a maximum penalty of five years. Connecticut General Statutes §§ 53a-35a(7) and 53a-212(b). Thus, to sentence the petitioner as originally structured would be unlawful. Upon realizing this, the trial court restructured the agreement and ordered that "on the charge of theft of a firearm, 25 months plus 35 months special parole; criminal possession of a pistol, 31 months consecutive; and on the charge of larceny in the third degree, one year concurrent. The total effective sentence imposed was 56 months to serve followed by 35 months special parole." Appendix A at 20. Although structured differently, the sentence imposed actually decreased the length of the petitioner's period of special parole from the agreed-upon three years to thirty-five (35) months.

For these reasons, the state habeas court's determination that counsel properly represented the petitioner is neither contrary to, or an unreasonable application of, clearly established Federal law. Ineffectiveness can be established only if a petitioner proves <u>both</u> deficient performance <u>and</u> prejudice. In this case, the petitioner plainly failed to establish prejudice because he has not demonstrated a reasonable probability that he would have received a more favorable outcome by persisting in his pleas of not guilty <u>and going to trial</u>. As a result, his claim must fail.

### III. CONCLUSION

Given the reasons outlined above, the state court's decision to reject the petitioner's claim is not contrary to, and is not unreasonable applications of, clearly established Federal


law as determined by the U.S. Supreme Court. Therefore, the claim must fail and the petition must be dismissed.

          Respectfully submitted,

          RESPONDENT-WARDEN DAVID STRANGE

By: _____
    JO ANNE SULIK
    Assistant State's Attorney
    Civil Litigation Bureau
    Office of the Chief State's Attorney
    300 Corporate Place
    Rocky Hill, Connecticut 06067
    (860) 258-5887
    (860) 258-5968 (fax)
    E-mail: JoAnne.Sulik@po.state.ct.us
    Fed. Bar. No. ct 15122

## **CERTIFICATION**

I hereby certify that a copy of this document was mailed to Larry Nelson, Inmate #77725, Carl Robinson Correctional Institution, 285 Shaker Road, P.O. Box 1400, Enfield, Connecticut 06083-1400, on July 12, 2004.

_____
JO ANNE SULIK
Assistant State's Attorney